**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ADELSO MENDEZ RAMIREZ and ELIDA ESPERANZA MENENDEZ SANTIAGO**<br><br>　　　　　**Plaintiffs**<br><br>　　**v.**<br><br>**BIOPLAST MANUFACTURING, LLC and GENESIS BIOTECHNOLOGY GROUP**<br><br>　　　　　**Defendants** | **CIVIL ACTION NO._____** |

## COMPLAINT

1.　　Plaintiffs Adelso Mendez Ramirez ("Adelso Mendez") and Elida Esperanza Menendez Santiago ("Elida Menendez") bring this action against Defendants Bioplast Manufacturing, LLC ("Bioplast") and Genesis Biotechnology Group ("Genesis").

2.　　Over the course of about one year, during which Plaintiffs were employed by Defendants, Plaintiffs were subjected to a range of unrelenting harassment, intimidation, and unfavorable treatment because of their race, color, and/or national origin. The mistreatment included but was not limited to: racial slurs and other verbal abuse; unfavorable work assignments that were both more difficult and more degrading than those given to other workers; threats of physical violence; and additional retaliatory conduct following complaints Plaintiffs made to Defendants' human resources department.

## NATURE OF ACTION

3.　　This employment action seeks redress for intentional race, color, and/or national origin discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, as amended

by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"); (2) the Civil Rights

Act of 1866 as amended, 42 U.S.C. § 1981 ("Section 1981"); and (3) the Pennsylvania Human

Relations Act, 43 P.S. §§ 951-963 ("PHRA").

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over the subject matter of Plaintiffs'

claims under Title VII and Section 1981 pursuant to 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs'

Pennsylvania state law claims alleged herein because those claims derive from a common

nucleus of operative facts as the federal claims.

6.      Plaintiffs have fulfilled all jurisdictional prerequisites to the institution of this suit.

      a.   On January 29, 2020, Plaintiffs timely filed Charges of Discrimination

         with the United States Equal Employment Opportunity Commission

         ("EEOC"), which were dual-filed with the Pennsylvania Human Relations

         Commission ("PHRC").

      b.   The EEOC issued Notices of Right to Sue on January 26, 2022, and

         Plaintiffs have filed this action within ninety (90) days thereafter. Exhibits

         A, B.

      c.   The PHRC Charges of Discrimination have remained open for more than

         one year.

7.      Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b). Defendants

committed the unlawful acts alleged in this complaint within the Eastern District of

Pennsylvania.

## PARTIES

**Plaintiffs**

8.     Plaintiff Adelso Mendez is a brown-skinned Hispanic man of Guatemalan national origin. He is the brother-in-law of Plaintiff Elida Menendez.

9.     Plaintiff Elida Menendez is a brown-skinned Hispanic woman of Guatemalan national origin. She is the sister-in-law of Plaintiff Adelso Mendez.

**Defendants**

10.    Defendant Bioplast is a manufacturer of plastic components for medical, clinical, and biotechnology purposes. Defendant Bioplast employs more than 15 employees at its principal place of business, located at 128 Wharton Road, Bristol, Pennsylvania 19007.

11.    Defendant Bioplast issued Plaintiffs' paychecks, assigned and supervised Plaintiffs' day-to-day work, had the ability to hire and fire Plaintiffs, and made disciplinary decisions relating to Plaintiffs.

12.    Defendant Genesis is a consortium of vertically integrated companies that develop, manufacture and distribute biotechnology-based products. Defendant Bioplast is a member company of Defendant Genesis.

13.    Defendant Genesis had the ability to hire and fire Plaintiffs and made disciplinary decisions relating to Plaintiffs.

## STATEMENT OF FACTS

14.    Plaintiff Elida Menendez began working at Defendant Bioplast's manufacturing plant in Bristol, Pennsylvania, in approximately December 2016.

15.    Plaintiff Adelso Mendez began working at Defendant Bioplast's manufacturing plant in Bristol, Pennsylvania, in approximately March 2017.

3

16.     Plaintiffs' duties included sorting, inspecting, and packaging plastic components produced by injection molding machines.

17.     Beginning in early 2018, Defendants' employees Jeffrey Perkins ("Perkins") and Alfonso Anderson ("Anderson") exercised the authority to direct, control, and/or supervise Plaintiffs' work.

18.     Throughout the time Perkins and Anderson supervised Plaintiffs, Perkins and Anderson mistreated and harassed Plaintiffs because of their race, color, and/or national origin.

19.     Perkins and Anderson subjected Plaintiffs to discriminatory treatment including racial slurs and other verbal abuse; unfavorable work assignments; threats of physical violence; and a range of retaliatory conduct following complaints Plaintiffs made to Defendants' human resources department about the discriminatory treatment.

**<u>Verbal Abuse</u>**

20.     On a daily or weekly basis, Perkins and Anderson insulted and demeaned Plaintiffs because of their race, color and/or national origin.

21.     Perkins and Anderson made statements to Plaintiffs such as:

    a.   "F*cking Hispanics are no good;"

    b.   "F*cking Hispanics, go back to where you came from;" and

    c.   "F*cking Hispanics, always trying to use the bathroom."

22.     Perkins and Anderson regularly told Plaintiffs they would call Immigration authorities on them.

23.     On one occasion, Plaintiff Elida Menendez became sick at work. Anderson responded by calling Plaintiffs "sick Hispanics" and asking why Plaintiffs worked at Defendant Bioplast at all.

24.    On numerous occasions, Perkins and Anderson told Plaintiff Adelso Mendez they didn't like "F*cking Hispanics" working there and they would do everything they could to make it impossible for him to continue working at Bioplast.

**Discriminatory Work Assignments**

25.    Perkins and Anderson subjected Plaintiffs to more difficult work assignments because of their race, color, and/or national origin. They often assigned Plaintiffs to work alone, without rotation, on the hardest machines that required standing, while non-brown skinned, non-Hispanic, and/or non-Guatemalan employees worked in pairs and rotated machines.

26.    Perkins and Anderson required Plaintiffs to operate, on their own, machines that typically require two people to operate them.

     a.    Many of the machines at Defendant Bioplast are typically operated by two workers at once.

     b.    Perkins and Anderson typically assigned non-brown skinned, non-Hispanic, and/or non-Guatemalan workers to operate those machines in pairs.

     c.    Perkins and Anderson typically required Plaintiffs to operate those machines alone.

27.    Perkins and Anderson required Plaintiffs to operate the most difficult machines.

     a.    Certain machines are physically more strenuous to operate than others.

     b.    Perkins and Anderson assigned Plaintiffs to operate the most strenuous machines with much higher frequency than they assigned non-brown

skinned, non-Hispanic, and/or non-Guatemalan workers to operate those machines.

   c.  Certain machines can be operated while sitting; others must be operated while standing.

   d.  Perkins and Anderson assigned Plaintiffs to the machines that require standing with far higher frequency than they assigned non-brown skinned, non-Hispanic, and/or non-Guatemalan workers to operate those machines.

   e.  On the infrequent occasions when Perkins and Anderson assigned Plaintiffs to machines that could be operated while sitting, Perkins and Anderson removed the chairs from the machines, so that Plaintiffs had to stand while they worked.

   f.  Perkins and Anderson did not remove chairs when non-brown skinned, non-Hispanic, and/or non-Guatemalan workers operated machines that could be operated while sitting.

28.   Perkins and Anderson refused to allow Plaintiffs to rotate through machines, causing exhaustion and injuries to Plaintiffs.

   a.  Perkins and Anderson typically allowed non-brown skinned, non-Hispanic, and/or non-Guatemalan workers to rotate machine assignments over the course of a shift.

   b.  Perkins and Anderson refused to rotate machine assignments for Plaintiffs, requiring Plaintiffs to work on the most strenuous machines for entire shifts.

    c.   Perkins and Anderson also typically allowed non-brown skinned, non-Hispanic, and/or non-Guatemalan workers to rotate through machines from shift to shift—that is, workers were not required to operate the same machine for multiple consecutive shifts.

    d.   Perkins and Anderson typically required Plaintiffs to work the same strenuous machines for multiple consecutive shifts, causing exhaustion and injuries to Plaintiffs.

29.   Perkins and Anderson required Plaintiffs to work while non-brown skinned, non-Hispanic, and/or non-Guatemalan workers took paid breaks.

    a.   On a nightly or almost nightly basis, Perkins and Anderson allowed non-brown-skinned, non-Hispanic, and/or non-Guatemalan workers to leave their shift 20 to 25 minutes early.

    b.   For the final 20 to 25 minutes of the shift, Perkins and Anderson required Plaintiffs complete final tasks to prepare the worksite for the following shift.

    c.   Perkins and Anderson insulted and mocked Plaintiffs as they completed these extra tasks.

**Other Discriminatory Treatment**

30.   Perkins and Anderson treated Plaintiffs differently in other ways because of their race, color, and/or national origin. Some illustrative examples follow.

31.   Perkins and Anderson destroyed and interfered with Plaintiffs' workstations.

    a.   At Bioplast's manufacturing plant, workers used nametag stickers to label boxes made by each worker.

7

b. Multiple times per week, Perkins stepped on Plaintiffs' nametags and used his foot to tear them apart. Anderson also destroyed Plaintiffs' nametags in this manner, although he did so less frequently than Defendant Perkins.

c. Additionally, on a close to daily basis, Perkins and Anderson took the plastic and other materials around Plaintiffs' machines and threw those materials on the floor.

d. Each time Perkins and Anderson threw Plaintiffs' materials on the floor, Perkins and Anderson then required Plaintiffs to clean up the materials.

e. On one occasion, Plaintiff Adelso Mendez slipped and fell on a piece of plastic thrown onto the floor by Perkins or Anderson. As a result, Plaintiff Adelso Mendez's back was injured.

32. Perkins and Anderson imposed discriminatory bathroom-use policies against Plaintiffs.

a. Workers were required to ask permission to use the bathroom during a shift.

b. Perkins and Anderson often ignored or denied reasonable requests by Plaintiffs to use the bathroom.

c. Perkins and Anderson did not ignore or deny requests by non-brown-skinned, non-Hispanic, and/or non-Guatemalan workers.

d. On at least one occasion, Perkins and Anderson denied Plaintiff Elida Menendez use of the bathroom for almost six hours.

33. On one occasion, Plaintiff Adelso Mendez asked Perkins to pass him a water bottle while he was operating a machine. In response, Perkins grabbed a nearly empty water

8

bottle, poured out the remaining water, pretended to urinate in the bottle, and offered it to Plaintiff Adelso Mendez. Perkins did not give Plaintiff Adelso Mendez the water he requested.

**Plaintiffs Report Discrimination and Defendants Retaliate**

34.    In addition to complaining about their treatment directly to Perkins and Anderson, Plaintiffs also made repeated complaints to the plant manager and to Defendants' human resources department ("HR") about their discriminatory working conditions. Despite these complaints, Defendants did not ameliorate the discrimination to which Plaintiffs were subjected.

35.    Following certain complaints to HR, meetings with representatives of HR and Plaintiffs were arranged. In those meetings, Plaintiffs described Perkins and Anderson's verbal abuse, discriminatory machine assignments, extra duties, discriminatory break policies, threats of violence, and other mistreatment.

36.    Plaintiff Adelso Mendez and Plaintiff Elida Menendez both stated to HR their belief that the discriminatory treatment was racially motivated.

37.    Following Plaintiffs' reports to HR, Perkins and Anderson escalated their discriminatory conduct against Plaintiffs including, but not limited to:

       a.    Anderson approached Plaintiff Adelso Mendez from behind with the sharp metal rod and pretended to stab him while calling him a "F*cking Hispanic." Out of fear that Defendant Anderson would follow through with the physical threat, from this moment onward Plaintiff Elida Menendez watched Anderson carefully whenever he walked behind Plaintiff Adelso Mendez so that she could warn Plaintiff Adelso Mendez if he was in danger.

b.  Anderson stated that he planned to cut Plaintiff Adelso Mendez's neck with a utility knife used at work to open boxes.

c.  Anderson and Perkins required Plaintiff Adelso Mendez to continue working past the end of his shift, and when he requested permission to leave, Anderson replied to the effect of: "You can't leave, you're our slave."

d.  Perkins enclosed Plaintiff Adelso Mendez away from all the other workers in a hot, stuffy workspace by shutting a large door and blocking a window. During this shift, Perkins monitored Plaintiff Adelso Mendez and prohibited him from using the bathroom.

e.  After one report, Perkins approached Plaintiff Adelso Mendez with a raised fist.

**<u>Discharge</u>**

38.   On August 2, 2019, representatives of Defendants' HR department called Plaintiff Adelso Mendez to a meeting.

39.   In that meeting, representatives of HR instructed Plaintiff Adelso Mendez to sign a written statement in English.

40.   One of the HR representatives, who spoke limited Spanish, explained to Plaintiff Adelso Mendez that the statement required him to take responsibility for conduct in violation of company policy.

41.   Plaintiff Adelso Mendez asked repeatedly for a Spanish translation of the statement. The HR representatives refused to provide a translation.

42.    Plaintiff Adelso Mendez also asked for a copy of the statement to take with him to review. The HR representatives told him he could not take a copy of the statement.

43.    Plaintiff Adelso Mendez refused to sign the statement and told the HR representatives that he would not sign without being able to read a copy of it in a language he could understand.

44.    When Plaintiff Adelso Mendez refused to sign, the HR representatives required him to give them his building access card.

45.    Plaintiff Elida Menendez was also called to meet with Defendants' HR representatives on the same day.

46.    The HR representatives also demanded Plaintiff Elida Menendez turn over her building access card.

47.    A Bioplast employee brought Plaintiff Adelso Mendez his belongings, which had been stored in his locker.

48.    An HR representative then escorted Plaintiff Adelso Mendez out of the building.

49.    Plaintiff Elida Menendez was also instructed to leave the building.

50.    Immediately following the meeting with HR, Plaintiff Adelso Mendez suffered serious physical symptoms. He went to the hospital due to these symptoms.

51.    Plaintiff Adelso Mendez experienced numbness in his fingers and lower legs, sweating, a rapid heartbeat, difficulty breathing, throbbing in his head, and mental confusion.

52.    Defendants sent Plaintiffs letters dated August 6, 2019, requiring Plaintiffs to respond within three working days if they wished to "continue with their employment." Perceiving the discriminatory working conditions at Bioplast to be intolerable, Plaintiffs did not return to work.

53.    Defendants completed termination paperwork for Plaintiffs on August 9, 2019.

**Damages**

54.    Plaintiffs suffered and continue to suffer physical pain and emotional distress caused by Defendants' discriminatory and retaliatory behavior.

55.    Plaintiff Adelso Mendez injured his back after slipping on a piece of plastic thrown onto the floor by Perkins or Anderson. He still experiences pain from the incident.

56.    Plaintiff Adelso Mendez was charged $894.73 for his hospital visit after being forced to leave Bioplast's manufacturing facility on August 2, 2019.

57.    Plaintiff Elida Menendez developed severe headaches and injuries to her back and arm caused by the discriminatory working conditions at Bioplast. She required hospital treatment for her headaches. Following her employment, she needed significant physical therapy to be able to raise her arm enough to brush her hair or touch her back. She continues to have pain from injuries to her back.

58.    Plaintiffs suffered lost wages as a result of their constructive discharge.

## COUNT I
### Hostile Work Environment
### Title VII

59.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

60.    Defendants Bioplast and Genesis engaged in unlawful discrimination on the basis of race, color, and/or national origin that altered the terms and conditions of their employment in violation of Section 703(a) of Title VII of the Civil Rights Act, as amended. *See* 42 U.S.C. § 2000e-2(a).

61.     The actions of Defendants Bioplast and Defendant Genesis created a hostile work environment.

62.     The conduct of Defendant Bioplast and Defendant Genesis's agents and employees was severe and/or pervasive, and would have been offensive to a reasonable person.

63.     The conduct of Defendants' agents was offensive to Plaintiffs.

64.     Defendant Bioplast and Defendant Genesis were aware of or should have been aware of the discriminatory conduct to which Plaintiffs were subjected.

65.     Defendant Bioplast and Defendant Genesis failed to prevent and/or correct their agents' discriminatory and offensive conduct toward Plaintiffs.

66.     The actions of Defendant Bioplast and Defendant Genesis were intentional, and were done with malice or reckless indifference to Plaintiffs' federally protected rights.

67.     As a direct result of Defendants' unlawful conduct in violation of Title VII, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, loss of earnings, and like injuries.

<u>**COUNT II**</u>
**Hostile Work Environment**
**42 U.S.C. § 1981**

68.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

69.     The actions of Defendants Bioplast and Genesis, through their agents and employees, violated 42 U.S.C. §1981.

70.     The actions of Defendants Bioplast and Genesis created a hostile work environment.

13

71.    The conduct of Defendant Bioplast and Defendant Genesis's agents and employees was severe and/or pervasive, and would have been offensive to a reasonable person.

72.    The conduct of Defendants' agents was offensive to Plaintiffs.

73.    Defendant Bioplast and Defendant Genesis were aware of or should have been aware of the discriminatory conduct to which Plaintiffs were subjected.

74.    By failing to prevent and/or correct the conduct of Plaintiffs' supervisors, Defendants Bioplast and Genesis created a hostile work environment because of Plaintiffs' race or color in violation of 42 U.S.C. § 1981.

75.    The actions of Defendants were intentional, and were done with malice or reckless indifference to Plaintiffs' federally protected rights.

76.    Defendants' actions intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

77.    As a direct result of Defendants' unlawful conduct in violation of 42 U.S.C. §1981, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, a loss of earnings, and like injury.

**COUNT III**
**Hostile Work Environment**
**PHRA**

78.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

14

79.    Defendants Bioplast and Genesis engaged in unlawful discrimination on the basis of race, color, and/or national origin that altered the terms and conditions of their employment in violation of the PHRA.

80.   The actions of Defendants Bioplast and Defendant Genesis, through their agents and employees, created a hostile work environment and deprived Plaintiffs of equal employment opportunities and otherwise affected their status as employees because of their race, color, and/or national origin.

81.   The conduct of Defendant Bioplast and Defendant Genesis's agents and employees was severe and/or pervasive, and would have been offensive to a reasonable person.

82.   The conduct of Defendants' agents was offensive to Plaintiffs.

83.   Defendant Bioplast and Defendant Genesis were aware of or should have been aware of the discriminatory conduct to which Plaintiffs were subjected.

84.   Defendant Bioplast and Defendant Genesis failed to prevent and/or correct their agents' discriminatory and offensive conduct toward Plaintiffs.

85.   The actions of Defendant Bioplast and Defendant Genesis were intentional, and were done with malice or reckless indifference to Plaintiffs' federally protected rights.

86.    As a direct result of Defendants' unlawful conduct in violation of Title VII, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, loss of earnings, and like injuries.

**COUNT IV**
**Disparate Treatment**
**Title VII**
*(Constructive Discharge and Conditions of Employment)*

87.    Plaintiffs incorporate by reference the preceding paragraphs of this

15

Complaint as if fully set forth herein.

88.     Defendant Bioplast and Defendant Genesis, through their agents and employees, engaged in unlawful discrimination on the basis of race, color, and/or national origin in violation of Section 703(a) of Title VII of the Civil Rights Act, as amended. *See* 42 U.S.C. § 2000e-2(a).

89.     The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, altered the conditions of Plaintiffs' employment.

90.     The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, created a hostile work environment so intolerable that a reasonable employee would feel forced to resign.

91.     Plaintiffs found the work environment so intolerable that they had no choice but to resign.

92.     The actions of Defendant Bioplast and Defendant Genesis were intentional, and were done with malice or reckless indifference to Plaintiffs' federally protected rights.

93.     As a direct result of Defendant Bioplast and Defendant Genesis's unlawful conduct in violation of Title VII, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, loss of earnings, and like injuries.

**COUNT V**
**Disparate Treatment**
**42 U.S.C. § 1981**
*(Constructive Discharge and Conditions of Employment)*

94.     Plaintiffs incorporate by reference the preceding paragraphs of this

Complaint as if fully set forth herein.

95.     Defendant Bioplast and Defendant Genesis, through their agents and employees, engaged in unlawful discrimination on the basis of race and color in violation of 42 U.S.C. § 1981.

96.     The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, altered the conditions of Plaintiffs' employment.

97.     Defendants' actions created a hostile work environment so intolerable that a reasonable employee would feel forced to resign.

98.     Plaintiffs found the work environment so intolerable that they had no choice but to resign.

99.     In doing so, Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

100.    The actions of Defendant Bioplast and Defendant Genesis were intentional, and were done with malice or reckless indifference to Plaintiffs' federally protected rights.

101.    As a direct result of Defendants' unlawful conduct in violation of 42 U.S.C. § 1981, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, and loss of earnings.

## COUNT VI
**Disparate Treatment**
**PHRA**
*(Constructive Discharge and Conditions of Employment)*

102.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

103.     Defendant Bioplast and Defendant Genesis, through their agents and employees, engaged in unlawful discrimination on the basis of race, color, and/or national origin in violation of the PHRA.

104.     The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, altered the conditions of Plaintiffs' employment.

105.     The actions of Defendant Bioplast and Defendant Genesis created a hostile work environment so intolerable that a reasonable employee would feel forced to resign.

106.     Plaintiffs found the work environment so intolerable that they had no choice but to resign.

107.     The actions of Defendant Bioplast and Defendant Genesis were intentional, and were done with malice or reckless indifference to Plaintiffs' rights.

108.     As a direct result of Defendants' unlawful conduct in violation of the PHRA, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, loss of earnings, and like injury.

## COUNT VII
**Retaliation**
**Title VII**

109.  Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

110.  The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, in retaliating against Plaintiffs for complaining of discrimination on the basis of race, color, and/or national origin, constituted a violation of Section 703(a) of Title VII of the Civil Rights Act, as amended. *See* 42 U.S.C. § 2000e-2(a).

111.  Defendant Bioplast and Defendant Genesis took materially adverse actions against Plaintiffs after Plaintiffs engaged in protected activity.

112.  These actions included threats of physical violence, unfavorable work assignments, formal discipline, and constructive discharge.

113.  The materially adverse actions taken by Defendants were serious enough to discourage a reasonable worker from complaining about discrimination in the future.

114.  In the retaliatory actions alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiffs.

115.   As a direct result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, a loss of earnings, and like injuries.

## COUNT VIII
### Retaliation
### 42 U.S.C. § 1981

116.  Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

117.  The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, in retaliating against Plaintiffs for complaining of discrimination on the basis of race and color, constituted a violation of 42 U.S.C. § 1981.

19

118.  Defendant Bioplast and Defendant Genesis took materially adverse actions against Plaintiffs after Plaintiffs engaged in protected activity.

119.  These actions included threats of physical violence, unfavorable work assignments, formal discipline, and constructive discharge.

120.  The materially adverse actions taken by Defendants were serious enough to discourage a reasonable worker from complaining about discrimination in the future.

121.  Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

122.  In the discriminatory actions alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiffs.

123.   As a direct result of Defendants' unlawful retaliatory conduct in violation of 42 U.S.C. § 1981, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, a loss of earnings, and like injury.

**COUNT IX**
**Retaliation**
**PHRA**

124.  Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

125.  The actions of Defendant Bioplast and Defendant Genesis, through their agents and employees, in retaliating against Plaintiffs for complaining of discrimination on the basis of race, color, and/or national origin, constituted a violation of the PHRA.

126.  Defendants took materially adverse actions against Plaintiffs after Plaintiffs engaged in protected activity.

127.  These actions included threats of physical violence, unfavorable work assignments, formal discipline, and constructive discharge.

128.  The materially adverse actions taken by Defendants were serious enough to discourage a reasonable worker from complaining about discrimination in the future.

129.  The actions of Defendants were intentional, and were done with malice or reckless indifference to Plaintiffs' rights.

130.  As a direct result of Defendants' unlawful conduct in violation of the PHRA, Plaintiffs have suffered permanent and irreparable harm causing them to sustain physical injury, emotional distress, humiliation, loss of earnings, and like injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

1.      Enter an order declaring Defendants discriminated against Plaintiffs based on their race (Hispanic), color (brown), and national origin (Guatemalan), created a hostile work environment, and retaliated against them for making complaints of discrimination.

2.      Award Plaintiffs actual, compensatory, statutory, and punitive damages.

3.      Award Plaintiffs attorneys' fees and court costs.

4.      Award such other relief as this Court deems just and  proper.

Dated: January 31, 2022

Respectfully submitted,

JUSTICE AT WORK, INC.

/s/ Samuel Datlof
Samuel Datlof, Esq.
   PA ID#: 324716
   Email: sdatlof@justiceatworklegalaid.org

Andrew Coval, Esq.
   PA ID#: 321487
   Email: acoval@justiceatworklegalaid.org

Nancy Rimmer, Esq.
   PA ID#: 205563
   Email: nrimmer@justiceatworklegalaid.org

Justice at Work
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123
(215) 733-0878

*Attorneys for Plaintiff*